Dargan, Ch.
delivered the opinion of the Court.
The question made in this appeal arises under the 25th clause of Ann Timothy’s will; which is in these words: — £! I direct my executors to pay over the residue of my estate, or bonds, or money, to the American Bible Society of New York, and to the American Missionary Society of New York, to whom I leave or bequeath it.” From the Master’s report it appears, that no such society exists, as the American Missionary Society of New York: and it has not been shewn, indeed it is admitted that no such society ever had an existence. On the part of the Bible Society it is contended, that the clause in question creates an estate in joint tenancy; and that there being no such society in existence as the American Missionary Society of New York, the said Bible Society is entitled to the whole legacy given in that clause by virtue of the jus accrescendi. The circuit decree negatives the construction, which would make the estate given in the 25th *239 clause, a joint tenancy, and from the circuit decree on this point, an appeal has been taken.
The estate in joint tenancy presents some of the most artificial rules of subtle distinctions of the ancient common law. It was once highly favored in England, (Master of the Rolls in Morley vs. Bird, 3 Ves. 630) doubtless for reasons that were feudal in their character, and influential in their day; hut which have long since ceased to operate. For whatever may have been the causes which led to the origin of this estate, or which recommended it to our rude and warlike ancestors of the feudal period, it is undeniable that, at this day, it has grown into disfavor in English and American Courts: more especially in Courts of Equity.
The learned Judge in the case already cited, says that “the ancient law on this subject still prevails. And unless there are words to sever the interest taken, it is at this moment a joint tenancy, notwithstanding the leaning of the Courts lately in favor of a tenancy in common. A legacy of a specific chattel, a grant of an estate, is a joint tenancy. It is true, the Courts, seeing the inconvenience of that, have been desirous, wherever they could find any intention of severance, to avail themselves of it: and their successive determinations have laid hold of any words for that purpose.”
Many distinctions prevail in the Court of Equity, in reference to this estate, that are not recognized at law. Thus, where two or more persons are engaged jointly in trade, and have debts due to them as partners, though at law they are joint tenants, and, on the death of one of them, the legal estate, at law, vests in the survivors — in equity the right of survivorship is not allowed, and the survivors are obliged to account to the representatives of the deceased partner: or, if two persons purchase real estate jointly with the view of carrying on trade, it is in equity a case, not of joint tenancy, but of tenancy in common. Lake vs. Craddock, (3 P. Wms. 158). And, if money is laid out jointly upon an estate held in joint tenancy, with a view to *240 its improvement, that, in this Court, is a severance, Lyster vs. Dolland, (1 Ves. Jr. 434).
The common law institutions of property have undergone many mutations in the progress of ages. Some of its harsher and most inconvenient rules have been abolished by the Legislative power: and others have been gradually and insensibly modified by the course of judicial decisions, and moulded so as better to conform to the convenience and sentiments of modern society. The most prominent, and I may say the most odious feature or incident of this estate (the right of survivorship) which in almost every instance defeats the intention of the testator, was abolished by our Act of Assembly of 1791. The Act did not abolish joint tenancy itself, but only this feature of the estate. It provided, in substance, that where two or more persons are seized or possessed of real or personal estate in joint tenancy, and one of them dies, the right of survivorship should not he allowed, hut the share or interest of the deceased joint tenant should go to his heirs at law or legal representatives. This left the rules of the common law in force where the deceased tenant for life had not been seized or possessed in his lifetime. In Herbemont vs. Thomas, (Chev. Eq. 21,) the question turned upon the construction of the words “ seized or possessed,” which occur in the Act. The testatrix had given a legacy to six persons (her nieces) in words which, at common law, would have constituted „them joint tenants; It happened that some of the legatees had died in the lifetime of the testatrix: and the question was, whether the survivors took the whole legacy by virtue of the jus accrescendi, or whether the shares of the deceased joint legatees lapsed under the provisions of the Act of 1791 into the residuary estate. It was clear, that at common law, where a devise or bequest is given to two in joint tenancy, and the devise or bequest fail as to one, from its being originally void, or from its being revoked by the testator, or from the death of one of the devisees or legatees in the testator’s life, the right of survivor-ship exists, and the survivor takes the whole as joint tenant. *241 The decision of the Court was that, as the will was ambulatory until the testatrix’s death, and no right or title could vest in the legatees until that event had occurred, they could not be considered as having been “ possessed” of any estate under the will, and the case by a fair interpretation of the Act, could not be regarded as embraced within its provisions. This decision has recently been followed by that in Ball vs. Deas, (2 Strob. Eq. 24,) where the same construction prevailed. The Act may, therefore, be considered as having received a settled interpretation in this particular. The Act of 1791, therefore, does not conflict with the claims advanced by the appellants.
I have before adverted to the tendency, or leaning, (as the phrase is) of courts in modem times,- — particularly Courts of Equity, — to avail themselves of any strong equitable circumstances, or of any' words employed by the testator in his will, that would imply a severance, to give such a construction, as would make the estate a tenancy in common, and not a joint tenancy. It is always a question of construction, and the object is to get at the intention of the testator; which must, however, be done in conformity with established rules of interpretation. The right of survivorship, as I have said, in almost every instance defeats the intention, and if the Court can perceive, either in the words or implication of the will, an intention not to create a joint tonancy, it will carry that intention into effect. Thus, in Marryat vs. Townly, (1 Ves. sen. 103, cited in the circuit decree), Lord Hardwick, in construing an estate a tenan-ancy in common, and not a joint tenancy, laid great stress upon the directions of the testator, that the trustees, in whom the legal estate was vested, should convey it to the devisees.— “ Wherever,” says his Lordship, “ there are such directions for the trustees, in whom the legal estate is vested, the Court has held it in its power, to mould it so as best to answer that intent of the testator.”
We will suppose the American Missionary Society of New York to have had an existence. This testatrix believed so, *242 when she executed her will. When she, by■ the 25th clause, directed her executors to pay over the residue of her estate, &c. to the American Bible Society of-New York, and to the American Missionary Society of New York, did she mean that they should pay it over to the two societies on their joint receipt and discharge 1 Or would the receipt of one, have been a discharge ,as against the claims of the other 1 I do not think the testatrix could have so intended. In what respect are directions for the executors to pay over, different, in their effect, upon the construction, from directions for trustees to convey ? In the latter case, we have seen Lord Hardwick holding, that such instructions entitle the Court to mould the construction “ so as best to answer the intent of the testator.”
The objects of the American Bible Society of New York, and of the American Missionary Society of New York, (supposing the latter to have existed,) were entirely different. The purpose of one was the distribution of Bibles; that of the other was the promotion of Missions. They could not co-operate in the same field of labor, and the same work of Christian and benevolent enterprize by the possession of a joint fund without a severance or division: or without departing from the objects of their organization. The testatrix must be considered as implying in her donation, that which would have been the immediate and inevitable result, if the fund could or had come into the joint possession of the two societies: namely, a division or separation of their interests. In no other way could the fund have been dedicated to the use which the testatrix designated: and she ought to be considered as having intended a division in the first instance. Such would be my conclusion, if the two societies to whom the testatrix bequeathed the residuum of her estate, had been, by the common law, entitled to take, as natural persons are entitled to take, in joint tenancy.
But there is another insuperable impediment in the way of law and authority to the success of this appeal. The Bible Society of New York is a corporate body. It is clear that, by the *243 principles of the common law, none but natural persons can take in joint tenancy. A corporation cannot take this estate, either jointly with another corporation, or with a natural person. The reason assigned in the early writers is, that they hold in different capacities and in different rights. Lord Coke, in his commentary upon the passage quoted in the circuit decree from Littleton, gives, very clearly, his views as to the reasons which gave rise to the distinction between natural persons and corporate bodies in this particular. He says — “ The &c. in the end of this section implieth, that so it is, if any body politic or corporate, be they regular as dead persons in law (whereof our author here speaketh) or secular: as if lands be given to two bishops, to have and to hold to them two and their successors : albeit the bishops were never any dead persons in law, but always of capacity to take, yet seeing that they take this purchase in their politic capacity, as bishops, they are presently tenants in common, because they are seized in several rights : for the one bishop is seized in the right of his bishoprick of the one moiety, and the other is seized iii the right of his bishoprick of the other moiety, and so by several titles and in several capacities : whereas joint tenants ought to have it in one and the same right and capacity, and by one and the same joint title.” (Co. Litt. Lib. 3, cap. 4, sect. 296). Authorities to this effect might be multiplied to a great extent; I cite some of them. 2 Saund. 319 ; Justice Windham’s case, 5 Co. 8, a; 2 Cru. Dig. 491; Finch, 83; Willion vs. Berkeley, Plow. 239. A modern writer (2 Crabb on Real Prop. §2311, m. p. 945) says, the Queen cannot hold an estate in joint tenancy. She is not seized in her natural capacity, but in her royal and politic capacity, in jure corones, which cannot stand in jointure with the seizen of the subject in his natural capacity. He asserts the same doctrine in regard to all corporate bodies. I doubt very much, if a single case, either English or American, can be adduced, where a corporation or body politic has been held to be seized or possessed of an estate in joint tenency.
*244 It is ordered and decreed that the appeal he dismissed, and the circuit decree rendered on the hearing at June Term, 1850, he affirmed.
Johnston, Dunkin and Wardlaw, CC. concurred.

Appeal dismissed.